UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| AARON MOISES BETANCOURT ROJAS, Petitioner, -v- KENNETH GENALO, et al., Respondents. | : | 26-CV-09098 (JAV) <br> OPINION AND ORDER |

JEANNETTE A. VARGAS, United States District Judge:

Petitioner Aaron Moises Betancourt Rojas ("Petitioner") filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging his detention by U.S. Immigration and Customs Enforcement ("ICE"). ECF No. 1 ("Petition") at 1. The Court directed Respondents to file a letter setting forth, in relevant part, whether Petitioner was, as alleged, detained in this District at the time the Petition was filed; if the government's asserted basis for Petitioner's detention is 8 U.S.C. § 1225(b)(2)(A), whether there is any basis to distinguish this case from *Barbosa de Cunha v. Freden*, 175 F.4th 61, 75 (2d Cir. 2026); and if not, whether Respondents would consent to issuance of the writ, subject to preservation of Respondents' arguments for appeal. ECF No. 3 ("Order to Answer") at 2. Respondents filed their letter in response to the Order to Answer on October 20, 2026. ECF No. 8 ("Opp'n"). Petitioner submitted a reply letter on October 23, 2026. ECF No. 11 ("Reply"). For the reasons that follow, the Petition is GRANTED.

## BACKGROUND

Petitioner is a citizen of Venezuela who entered the United States in September 2022. Opp'n at 2. Shortly thereafter, he was apprehended by Border Patrol near the Paso del Norte border. *Id.* On September 21, 2022, Border Patrol released him on humanitarian parole pursuant to 8 U.S.C. § 1182(d)(5)(A), valid until November 20, 2022. *Id.* Petitioner then moved to New York, where he has been residing since at least 2022. Petition, ¶ 8. A year after entering the United States, Petitioner applied for asylum. Reply at 1. He also has a two-year-old United States citizen child who suffers from a serious medical condition. Petition, ¶ 9.

In March 2025, federal officials obtained a criminal complaint and arrest warrant charging Petitioner with improper entry under 8 U.S.C. § 1325(a)(1), based on his 2022 entry. Opp'n at 2; *see also* ECF No. 7 ("Shaw Decl."),¶ 7. Homeland Security Investigations agents executed that warrant on October 8, 2026. Shaw Decl., ¶ 9. While Petitioner was in criminal custody, ICE lodged an immigration detainer and, on October 15, 2026, issued a Form I-200 administrative arrest warrant. *Id.*, ¶¶ 9, 12. On October 16, 2026, Petitioner pleaded guilty to the improper-entry charge and was sentenced to time served. *Id.*, ¶ 13. As soon as criminal custody ended, ICE took Petitioner into civil immigration custody under the I-200 warrant. *Id.*, ¶ 14.

Respondents concede that ICE "failed to conduct an initial custody determination under § 1226(a)" after arresting Petitioner because it believed he was subject to mandatory detention under Section 1225(b)(2)(A). Opp'n at 6. ICE further states that during post-arrest processing it served the I-200, served Petitioner a Notice to Appear ("NTA") charging him as inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i), and filed the NTA with the immigration court. Shaw Decl., ¶¶ 15-17. Petitioner was then, also on October 16, 2026, transferred to Delaney Hall in Newark, New Jersey. *Id.*, ¶ 19. Respondents confirm that Petitioner was nonetheless located in this District when the habeas petition was filed, and they do not dispute venue. Opp'n at 1. Petitioner is not subject to a final order of removal. *Id.* at 8.

**LEGAL STANDARDS**

Petitioner brings a petition for a writ of habeas corpus under 28 U.S.C. § 2241, which "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). "Federal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention." *Lopez v. Sessions*, No. 18-CV-4189 (RWS), 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing *Demore v. Kim*, 538 U.S. 510, 516-17 (2003)).

The Petition turns principally on the same question that "dozens of other district courts have recently confronted: whether, as a person who has long been living in the United States after entering the country unlawfully, [he] is detained under 8 U.S.C. § 1225(b)(2)(A) or . . . 8 U.S.C. § 1226(a)." *Cardenas v. Almodovar*, No. 25-CV-9169 (JMF), 2025 WL 3215573, at *1 (S.D.N.Y. Nov. 18, 2025). The case then poses a "subsidiary question—depending upon which section authorizes Petitioner's detention— . . . whether Petitioner's re-detention violated the Fifth Amendment's procedural and substantive due process requirements." *Savane v. Francis*, 801 F. Supp. 3d 483, 485 (S.D.N.Y. 2025).

## DISCUSSION

### A. Section 1226(a), Not Section 1225(b)(2)(A), Governs

Respondents assert that "Petitioner's detention is governed by 8 U.S.C. § 1225(b)(2)(A), as Petitioner was previously apprehended at the border within 100 miles and 14 days of his unlawful entry." Opp'n at 2. In *Barbosa da Cunha v. Freden*, the Second Circuit held that Section 1225(b)(2)(A) only applies to "(1) noncitizens who are present and have not been admitted, and (2) are requesting (3) lawful entry into the United States after inspection and authorization." 175 F.4th 61, 74 (2d Cir. 2026). While Respondents recognize that *Barbosa da Cunha* may foreclose their argument, they nevertheless argue that this case is distinguishable because "*Barbosa da Cunha* expressly preserved Section 1225(b)(2)(A)'s application to noncitizens who— like Petitioner—were apprehended at the border." Opp'n at 3.

Thus, Respondents contend that Petitioner falls within the scope of Section 1225(b)(2)(A) because he was apprehended shortly after crossing the U.S. border, notwithstanding his subsequent release and arrest years later. *Id.* (noting that petitioner in *Barbosa da Cunha* entered the U.S. without inspection and was arrested by immigration officials years later).

Respondents continue that Petitioner's release on parole pursuant to 8 U.S.C. § 1182(d)(5)(A) thereby reverted his status back to "that of any other applicant for admission," rendering him subject to mandatory detention under Section 1225(b). Opp'n at 4 (citing 8 U.S.C. § 1182(d)(5)(A)). In support of this argument, Respondents cite *Rana v. Genalo*, which applied Section 1225(b) to an expired parolee who was re-arrested years after his initial apprehension near the U.S. border. No. 26-CV-849 (JPC), 2026 WL 1863815, at *5-7 (S.D.N.Y. June 29, 2026); Opp'n at 4-5.

While Respondents' position is not squarely at odds with *Barbosa da Cunha*, it undoubtedly conflicts with "most district courts in this Circuit" that have held that "§ 1225(b) does not apply to noncitizens whose parole has expired and whom ICE thereafter takes into custody." *Bernal Morales v. Joyce*, No. 26-CV-6723 (PAE), 2026 WL 2445050, at *5 (S.D.N.Y. Aug. 20, 2026) (collecting cases). Respondents concede that they therefore face an uphill battle. Opp'n at 5 (collecting district court cases in the Second Circuit that "have rejected similar arguments since the *Barbosa da Cunha*"). As already stated in other cases, the Court disagrees with the

reasoning in *Rana* and instead follows "most district courts in this Circuit" in rejecting Respondents' argument. *Bernal Morales*, 2026 WL 2445050, at *5.

Respondents try to distinguish this case from the Court's prior decision in *Mcdonald v. Francis*, which similarly held that the petitioner's detention was governed by Section 1226(a), and not by Section 1225(b)(2)(A). No. 25-CV-09355 (JAV), 2025 WL 3295906, at *3 (S.D.N.Y. Nov. 26, 2025) (collecting cases); *see* Opp'n at 5-6. There, the petitioner was likewise detained at the border, released from custody, and arrested by ICE years later. *Mcdonald*, 2025 WL 3295906, at *1-2. Respondents note that Petitioner here was released on parole under Section 1182(d)(5)(A) rather than released on his own recognizance as in *Mcdonald*. Opp'n at 5-6. Yet they are unable to demonstrate how this distinction is material to the question of whether the Petitioner is an applicant for admission who is seeking admission" within the meaning of the statute. *Mcdonald*, 2025 WL 3295906, at *3. The Court therefore applies its analysis in *Mcdonald* in concluding that Petitioner is not an applicant seeking admission, and Section 1225(b) cannot apply.

The Court holds, consistent with the overwhelming majority of district courts in this Circuit, that "§ 1225(b)(2)(A) does not authorize a paroled noncitizen's confinement after the expiration of his parole, and that the arrest of noncitizens under these circumstances is instead governed by § 1226(a)." *Bernal Morales*, 2026 WL 2445050, at *5. (citations omitted). Accordingly, Petitioner's detention was

subject to Section 1226(a), and not mandatory detention under Section 1225(b)(2)(A).

**B. Respondents Violated Petitioner's Due Process Rights**

That conclusion does not end the inquiry. Because Petitioner's detention is subject to Section 1226(a), the Court must now address whether Respondents' exercise of discretion violated Petitioner's due process rights.

The Fifth Amendment's Due Process Clause prevents the Government from depriving any person of "life, liberty, or property, without due process of law," U.S. Const. amend. V., including whose "presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Due process demands that unless a person is "given[] notice of the case against him and opportunity to meet it," he may not be detained. *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976).

In the Second Circuit, the adequacy of the process given in civil immigration confinement is assessed under the *Mathews v. Eldridge* balancing test. *Valdez v. Joyce*, 803 F. Supp. 3d 213, 217 (S.D.N.Y. 2025) (citing *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020)). This test evaluates "(1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of that interest through the procedures used; and (3) the Government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail." *Id.* (citing *Mathews*, 424 U.S. at 335).

The first *Mathews* factor weighs heavily in Petitioner's favor because detention implicates his fundamental liberty interest "in being free from imprisonment." *Black v. Decker*, 103 F.4th 133, 151 (2d Cir. 2024). Although the Government may detain Petitioner under Section 1226(a), due process requires adequate procedural protections, *Zadvydas*, 533 U.S. at 690, which includes "an individualized custody determination," as required by the implementing regulations of Section 1226(a). 8 C.F.R. § 1236(d)(1). That determination must assess (1) whether Petitioner poses a "danger to property or persons" and (2) whether he is "likely to appear for any future proceeding." *Lopez Benitez v. Francis*, 795 F. Supp. 475, 493 (S.D.N.Y. 2025) (quoting 8 C.F.R. § 1236.1(c)(8)).

Here, Respondents concede that ICE "failed to conduct an initial custody determination under § 1226(a)" because it believed Petitioner's detention was mandatory. Opp'n at 6. Although ICE completed a worksheet and Form I-286 commonly associated with that determination, Respondents state that both were "completed in error."[1] Opp'n at 3. Indeed, the underlying criminal charge that Respondents relied upon to arrest Petitioner arose from his unlawful entry in 2022, which speaks very little about his present dangerousness or flight risk. Shaw Decl.,

[1] Respondents' "erroneous" processing of Petitioner under Section 1226(a) is not unheard of. *See, e.g.*, *J.G.O. v. Francis*, 2025 WL 3040142, at *2 (S.D.N.Y. Oct. 28, 2025) (describing practice where ICE, beginning in 2025, "detained noncitizens pursuant to § 1226(a), then, only afterward, argued that they were instead detained under § 1225(b)(2)").

¶ 9. The record thus fails to show that ICE properly exercised its discretion in this instance, as required by Section 1226(a).

As to the second *Mathews* factor, requiring an individualized custody determination serves to prevent an erroneous deprivation of liberty. *Lopez Benitez*, 795 F. Supp. 3d at 495. That risk is substantial here, where ICE detained Petitioner without assessing dangerousness or flight risk under Section 1226(a).

Finally, as to the third factor, requiring Respondents to justify detention promotes its interest in avoiding unnecessary incarceration. *Black*, 103 F.4th at 154; *see also Rosales-Mireles v. United States*, 585 U.S. 129, 139 (2018) (observing that "any amount of actual jail time ... has exceptionally severe consequences for the incarcerated individual and for society which bears the direct and indirect costs of incarceration" (cleaned up)). Accordingly, the *Mathews* factors weigh in Petitioner's favor.

Having determined that Petitioner was detained by ICE under Section 1226(a), that his procedural due process rights were violated, and that he is entitled to a writ of habeas corpus on those bases, the Court need not address Petitioner's alternative arguments that Respondents' actions violated the Administrative Procedure Act.

**CONCLUSION**

Accordingly, the Petition is GRANTED. The Court ORDERS Respondents to immediately and unconditionally release Petitioner Aaron Moises Betancourt Rojas

from civil immigration custody. Release shall not be conditioned on any physical or electronic monitoring device or restraint under the immigration laws of the United States pending a final determination in his removal proceedings. Respondents shall certify compliance with this Order by 5:00 p.m. on October 30, 2026.

The Clerk of Court is instructed to enter judgment in favor of Petitioner and close this case.

SO ORDERED.

Dated: October 29, 2026
New York, New York

JEANNETTE A. VARGAS
United States District Judge